CLYDENE W. ROBBINS, WIDOW; CLYDENE W. ROBBINS, NEXT FRIEND OF SARAH EDITH ROBBINS, LARRY DEAN ROBBINS, CHARLES RANDY ROBBINS AND KATHY DARLENE ROBBINS, CHILDREN OF CHARLIE ROBBINS, DEC'D., EMPLOYEE, PLAINTIFF;

— AND —

VELMA HEWITT WEAVER, NEXT FRIEND OF DANNY LEWIS AND CYNTHIA LEIGH LEWIS, CHILDREN OF MRS. TERRI D. LEWIS, DEC'D., EMPLOYEE, PLAINTIFF;

v.

O. T. NICHOLSON, EMPLOYER; CASUALTY RECIPROCAL EXCHANGE, CARRIER; DEFENDANTS

No. 58

(Filed 10 May 1972)

1. Master and Servant § 55— workmen's compensation — compensable death

Under the Workmen's Compensation Act a compensable death is one which results to an employee from an injury by accident arising out of and in the course of his employment. G.S. 97-2(6).

2. Master and Servant § 59— workmen's compensation — assault

Although an assault is an intentional act, it may be an accident within the meaning of the Compensation Act when it is unexpected and without design on the part of the employee who suffers it.

3. Master and Servant § 56— workmen's compensation — "in the course of" — "arising out of"

As used in the Workmen's Compensation Act, the words "in the course of the employment" refer to the time, place and circumstances under which an accidental injury occurs, and the phrase "arising out of the employment" refers to the origin or cause of the accidental injury.

4. Master and Servant § 59— workmen's compensation — murder by employee's husband — in the course of employment

The deaths of two employees were the result of injury by accident arising in the course of their employment where they were unexpectedly shot and killed by the husband of one of the employees while performing their duties on the premises of their employer, where their employment required them to be, but the risk was not an incident of the employment.

5. Master and Servant § 56— workmen's compensation — injury arising out of employment

An injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment.

Robbins v. Nicholson

6. Master and Servant § 59— workmen's compensation — assault by third person

When the moving cause of an assault upon an employee by a third person is personal or the circumstances surrounding the assault furnish no basis for a reasonable inference that the nature of the employment created the risk of such an attack, the injury is not compensable even though the employee was engaged in the performance of his duties at the time.

7. Master and Servant § 59— workmen's compensation — murder of employees by jealous husband

The deaths of two employees of a grocery store who were unexpectedly shot and killed by the *femme* decedent's husband while they were performing their duties on the premises of their employer did not result from injuries arising out of their employment, where all the evidence showed that the *femme* decedent had left her husband because of his excessive drinking, and that the husband murdered his wife, her employer and her male co-worker because he believed (1) that the co-worker had replaced him in his wife's affection and (2) that if the employer discharged his wife, which the employer refused to do, she would have to return to him, the employer's refusal to discharge the *femme* decedent not having made the risk that her husband would assault her or one of her fellow employees a risk arising out of the employment, and the risk of murder by a jealous husband not being one which a rational mind would anticipate as an incident of the employment of both sexes in a business.

APPEAL by defendants from the decision of the Court of Appeals, reported in 10 N.C. App. 421, 179 S.E. 2d 183, affirming awards made to claimants by the North Carolina Industrial Commission. The case was docketed and argued as Case No. 35 at the Fall Term 1971. As to claimants Robbins, defendants appeal under G.S. 7A-30(2) ; as to claimants Lewis, defendants' petition for certiorari was allowed.

These two cases, which involve separate claims for deaths resulting from the same accident, are proceedings under the Workmen's Compensation Act. They were consolidated for hearing by the Industrial Commission. The decisive facts are not disputed.

In December 1967 Charlie Robbins (Robbins) and Terri Lewis (Terri) were employed by O. T. Nicholson (Nicholson), who operated a grocery and adjacent coal yard in Lexington. Robbins had worked for Nicholson about five years; Terri had been employed approximately two years and nine months. She was married to Daniel Lewis (Lewis), and the couple had two minor children, the claimants Danny Lewis (13) and Cynthia

Leigh Lewis (11). Lewis was a furniture worker. He had worked in various factories in Piedmont North Carolina.

Both before and after his marriage Lewis "drank on weekends, heavy." In consequence, domestic problems resulted. Terri twice left him—the first time, shortly after the marriage; the last time, on Thanksgiving 1967.

In July 1967 Lewis rented a beach cottage with the intention of taking the family on a vacation. However, three or four days before they were to leave, Terri said she wouldn't go; that she had to work. When Nicholson refused Lewis' request to let Terri off, Lewis said to him, "Looks like this job is breaking up my home." Terri remained on the job, and Lewis went to the beach with his children and mother-in-law.

In September 1967 Lewis decided that Terri was "acting funny." On November 1st he went to the grocery where he observed Terri and another employee, James Waller, putting up stock. He told Terri that he would kill Waller if he was going to work with her. On the same occasion he asked her if she wasn't "running around with Mr. Robbins." She assured him she wasn't running around with anyone, but he told her if he ever caught her with Robbins out of the store, or working with him in the store, he would kill them both.

Because of Lewis' conduct at the store and his continuous drinking, Terri left him on or about November 22nd. Shortly thereafter he went to the store and requested her to go home with him. She refused, and he said, "Well you won't live." He also told her that if she "took out a nonsupport warrant on him that she would not live to see Christmas." Later he went to the store and said to Nicholson, "I want you to let my wife go." When Nicholson replied, "Your wife needs to work," Lewis said, "If you don't let her go, you will never live to see Christmas." Lewis told a neighbor that he did not want his wife to work at Nicholson's store because, if she had no income, she would have to bring the children and come back home.

On 27 November 1967 Terri signed a warrant for Lewis, charging him with having failed to provide adequate support for his children. Thereafter he went to the store and told Terri that Robbins and Nicholson had caused her to take out the warrant, and he would kill them too. On 20 December 1967 Lewis was convicted of the charge contained in the warrant and ordered to

Robbins v. Nicholson

pay $15.00 on that day and $50.00 every two weeks thereafter for the support of his children.

About 3:30 on the afternoon of 25 December 1967 Lewis went to the home of his friend, Foyelle Cecil, and told him he intended to kill three people—his wife, "her lover," and a third person whom he did not name. Lewis had been drinking. Cecil advised him against executing such a plan and, after an hour and a half of discussion, Lewis agreed that perhaps "he had better forget about it" and left.

Nicholson's grocery was open for business on the afternoon of Christmas Day. About 5:30 p.m. Terri was at the cash register, and Robbins was at the end of the counter "sacking groceries" when Lewis entered with a rifle. He shot and killed both Robbins and Terri. Then he went into the stockroom where Nicholson and Miss Lillian Jones were working. After knocking Miss Jones out of the way, Lewis shot and killed Nicholson. He then went outside where he remained until the police came and arrested him.

Robbins was survived by his widow and four minor children, the claimants herein; Terri, by her two minor children.

The Industrial Commission found facts substantially as detailed above and included a specific finding that the "employment of Terri and Robbins at the Nicholson store was the chief origin of the matrimonial difficulties between Terri and Lewis." The parties stipulated that the deaths of Terri and Robbins were the result of injuries by accident. The Industrial Commission held as a matter of law that the fatal accident arose out of and in the course of their employment at Nicholson's grocery.

(We note that all the evidence tended to show that Terri was a woman of good character, and there was no evidence of any improper relationship between her and Robbins.)

The Commission held that the dependents of Terri and Robbins were entitled to compensation under G.S. 97-38, G.S. 97-39, and G.S. 97-41. Defendants appealed to the Court of Appeals. In an opinion by Judge Britt, Judge Hedrick concurring, the Court of Appeals affirmed both awards. In a separate opinion, Judge Campbell concurred as to the dependents of Terri and dissented as to the award to the dependents of Robbins.

*T. H. Suddarth, Jr., and Jack E. Klass for claimants Robbins.*

*J. Lee Wilson and Ned A. Beeker for claimants Lewis.*

*Kennedy, Covington, Lobdell & Hickman by Edgar Love III, for defendants appellants.*

SHARP, Justice.

[1] Under the Workmen's Compensation Act a compensable death is one which results to an employee from an injury by accident *arising out of* and *in the course of* his employment. G.S. 97-2(6) (1965); *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308 (1963). The two italicized phrases are not synonymous; they "involve two ideas and impose a double condition, both of which must be satisfied in order to bring a case within the Act." *Sweatt v. Board of Education,* 237 N.C. 653, 657, 75 S.E. 2d 738, 742 (1953).

This appeal presents only the question whether the deaths of Terri and Robbins resulted from injuries by accident *arising out of* their employment at Nicholson's grocery. The parties have stipulated that the deaths were accidents and, clearly, they occurred in the course of their employment.

[2-4] Although an assault is an intentional act, it may be an accident within the meaning of the Compensation Act when it is unexpected and without design on the part of the employee who suffers from it. *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668 (1949). The words "in the course of the employment" as used in this Act, refer to the time, place and circumstances under which an accidental injury occurs; the phrase "arising out of the employment" refers to the origin or cause of the accidental injury. *Clark v. Burton Lines,* 272 N.C. 433, 158 S.E. 2d 569 (1967); *Taylor v. Twin City Club,* 260 N.C. 435, 132 S.E. 2d 865 (1963); *Withers v. Black, supra.* Terri and Robbins were unexpectedly shot and killed by Lewis during working hours while performing their duties as employees on the premises of their employer, where their employment required them to be. Thus, their deaths were the result of injury by accident arising during the course of their employment.

[5] An accident occurring during the course of an employment, however, does not *ipso facto* arise out of it. The term "arising out of the employment" is not susceptible of any all-inclusive

definition, but it is generally said that an injury arises out of the employment "when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment." *Perry v. Bakeries Co.*, 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964). In other words, to be compensable, "[t]he injury must spring from the employment or have its origin therein." *Bolling v. Belk-White Co.*, 228 N.C. 749, 750, 46 S.E. 2d 838, 839 (1948). "The injury must come from a risk which might have been contemplated by a reasonable person as incidental to the service when he entered the employment. It may be said to be incidental to the employment when it is either an ordinary risk directly connected with the employment, or any extraordinary risk which is only indirectly connected with the service owing to the special nature of the employment." *Lockey v. Cohen, Goldman & Co.*, 213 N.C. 356, 359, 196 S.E. 342, 344-45 (1938).

In *Harden v. Furniture Co.*, 199 N.C. 733, 155 S.E. 728 (1930), one employee killed another, but the "motive which inspired the assault was unrelated to the employment of the deceased and was likely to assert itself at any time and in any place." *Id.* at 736, 155 S.E. at 730. In denying compensation this Court quoted with approval the following exposition by the Supreme Judicial Court of Massachusetts: " 'It (the injury) arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Id.* at 735, 155 S.E. at 729-30. *Accord, Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596 (1954); *Bryan v. T. A. Loving Co.*, 222 N.C. 724, 24 S.E. 2d 751 (1943).

---

---

**[6]** *A fortiori,* when the moving cause of an assault upon an employee by a third person is personal, or the circumstances surrounding the assault furnish no basis for a reasonable inference that the nature of the employment created the risk of such an attack, the injury is not compensable. This is true even though the employee was engaged in the performance of his duties at the time, for even though the employment may have provided a convenient opportunity for the attack it was not the cause. *Ellis v. Rose Oil Company of Dixie,* 190 So. 2d 450 (Miss. (1960) ; 6 Schneider, Workmen's Compensation Text, § 1561(a) (1948) ; 99 C.J.S. *Workmen's Compensation* § 227 (1958) ; 58 Am. Jur. *Workmen's Compensation* § 265 (1948) ; Annots., 112 A.L.R. 1258; 40 A.L.R. 1122; 29 A.L.R. 437; 15 A.L.R. 588.

In *Duerock v. Accaregui,* 87 Idaho 24, 390 P. 2d 55 (1964), the claimant was the manager of a motel. Her employment made her subject to call at any time. She lived with her husband in an apartment connected with the motel. Her husband, who had become unable to hold a job because of his alcoholism, resented the fact that his wife was the primary breadwinner. He had repeatedly demanded that she quit her employment. One evening, while she was preparing their supper, he repeated this demand. She told him that until he found and kept a job she could not give up hers, and that she did not want to discuss the matter further. Thereupon, he shot her and himself. In consequence she was paralyzed, and he died. In sustaining the Board's denial of compensation, the Supreme Court of Idaho held that although claimant's injury resulted from an accident occurring in the course of her employment, it did not arise out of it; that her injuries were not the result of an industrial, but of a domestic hazard. "The risk existed before her employment. It was a personal risk she brought with her, a part of her domestic and private life. It was not a risk occasioned by, incident to, or a condition of, her employment." *Id.* at 37, 390 P. 2d at 63.

Among the authorities cited by the Idaho Court in support of the foregoing decision was *Harden v. Furniture Co., supra.*

In *State House Inn v. Industrial Com.,* 32 Ill. 2d 160, 204 N.E. 2d 17 (1965), the claimant was a married woman working the night shift as a switchboard operator at the Inn. About 3:00 a.m. she went with the night manager into the dining room for food. The claimant's husband suddenly appeared and "violently assaulted the pair, striking them both in a fit of jealous rage." On appeal, the Supreme Court held against the claimant,

saying: "[A]n injury does not arise out of the employment if it is caused by reason of something unrelated to the nature of the employment. An injury not fairly traceable to the employment as a contributing, proximate cause, and which comes from a hazard to which the employee would have been equally exposed apart from the employment, does not arise out of it. If Mrs. Strode's injury was caused by her husband's attack it could not be said to have arisen out of her employment." *Id.* at 163-64, 204 N.E. 2d at 19.

In the similar case of *Belden Hotel Co. v. Industrial Com.,* 44 Ill. 2d 253, 255 N.E. 2d 439 (1970), the husband of a hotel maid, in a fit of jealousy, killed one of her male co-workers. An award to his dependents was reversed because "[c]ompensation is proper only where it is shown that the injury arose out of some risk inherent in the conditions of employment." *Id.* at 255, 255 N.E. 2d at 440. *Accord, Wood v. Aetna Casualty & Surety Company,* 116 Ga. App. 284, 157 S.E. 2d 60 (1967).

[7]   In this case all the evidence tends to show that Lewis murdered his wife, Terri; her employer, Nicholson; and her fellow worker, Robbins, because he believed (1) that Robbins had replaced him in his wife's affection and (2) that if Nicholson would discharge her, and she had no job, she would have to return to him. The three assaults were entirely unrelated to the nature of the victim's employment; they did not result from the work either Terri or Robbins was required to do. Indeed, it was not the fact that Terri was working at a grocery which created the risk of an assault by her husband, but the fact that she was gainfully employed at all. She would have been exposed to the same risk in any business or industry which paid wages and employed both sexes. Further, any male employee whose duties required him to work with her or beside her would have been equally endangered. As the Idaho Court said with reference to Mrs. Duerock, the risk which caused the deaths of Terri and Robbins existed before her employment. It was a personal risk she brought to the grocery from her domestic and private life. It was not occasioned by, incident to, or a condition of her employment.

Nicholson was under no duty to discharge Terri merely because her husband demanded he do so and, under the circumstances here disclosed, retaining her as an employee did not make the risk that Lewis would assault her or one of her fellow employees a risk arising out of the nature of the employment.

In our view, the evidence will not sustain the Commission's finding that "the employment of Terri and Robbins at the Nicholson store was the chief origin of the matrimonial difficulties between Terri and Lewis." The origin was his alcoholism, and it was the fact that she finally left him which motivated the assaults. However, even if it were conceded that her employment was a major source of friction between Terri and Lewis, that friction was not a risk arising *out of* the nature of her employment.

Notwithstanding the events at Nicholson's grocery on Christmas Day 1971, the risk of murder by a jealous spouse is not one which a rational mind would anticipate as an incident of the employment of both sexes in a business or industry. The possibility that an employee's spouse will become jealous of an associate—with or without cause—is a hazard "common to the neighborhood"; it is independent of the relation of master and servant.

The evidence in this case does not support the Commission's finding or conclusion that Lewis' assaults upon Terri and Robbins were accidents arising out of their employment.

The decision of the Court of Appeals is reversed with directions that these proceedings be remanded to the Industrial Commission for the entry of an award in accordance with this opinion.

Reversed and remanded.