Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence REVERSES the holding of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement dated April 21, 1998 as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times the plaintiff, Ella Mae Boone, was an employee of the defendant, Wal-Mart stores, Inc. d/b/a/ Sams Club, which is an employer as defined in the Workers Compensation Act.
3. At all relevant times, Wal-Mart Stores, Inc. was insured with regard to its liability under the North Carolina Workers Compensation Act through the Insurance Company of the State of Pennsylvania.
4. Plaintiff sustained certain injuries on October 3, 1997.
5. Plaintiffs average weekly wages shall be determined by reference to the stipulated Forms 22, from which plaintiffs counsel calculates the average weekly wage to be $161.88, yielding a compensation rate of $107.79 and defendants counsel calculates the average weekly wage to be $156.80, yielding a compensation rate of $104.53.
6. The following Stipulated Exhibits have been entered into evidence.
a. Complete set of plaintiffs medical records 87 pages
b. Condensed version of plaintiffs medical records 30 pages
c. Proceedings leading to hearings 9 pages
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a seventy year-old woman with an eighth grade education. She began working for Wal-Mart, Inc., d/b/a/ Sams Club in or about November, 1995 as a "demo person who serves selected food items to Sams Club members in its warehouse.
2. The defendant-employer instructed plaintiff and all demo employees to be very courteous and helpful to all Sams Club members. The defendant-employer also instructed all demo employees to wear black and white clothes to work. Most employees parked their automobiles in the first few rows of the employers parking lot closer to the end of the warehouse, rather than near the middle rows, which were closer to the warehouses entrance.
3. Defendant-employer paid its demo employees by payroll check every two weeks on Fridays, and allowed demo employees to pick up their checks in the store starting at about 9:00 a.m. on Friday morning. The defendant-employer did not allow the demo employees to cash their payroll checks at Sams Club. On Fridays, Sams Club did not open to its members until 10:00 a.m.
4. Plaintiff usually worked on Fridays from 11:00 a.m. until 7:00 p.m. She was unable to cash her payroll check from Sams Club at local banks after work because the banks would be closed at the end of her shift. Plaintiff would usually pick up her paycheck at Sams Club at about 9:30 a.m. on Friday, drive to her bank, cash her check, and return to Sams Club to report to work by 11:00 a.m.
5. Friday, October 3, 1997 was plaintiffs payday at Sams Club, and plaintiff drove to work to pick up her paycheck. Plaintiff arrived at about 9:30 a.m. She was dressed in the required black and white clothing. After she picked up her check in the store, she drove to her bank, cashed her check and put the money in her purse. She then went to the gas station, filled her gas tank, and paid cash for the gas. At about 10:30 a.m. she arrived back at Sams Clubs parking lot to report for work at 11:00 a.m. Plaintiff parked her automobile where Sams employees usually parked.
6. While plaintiff was still in her automobile, she saw a male person pushing a Sams Club shopping cart into the cart return area near where she was parked. The man walked over to plaintiff and said to her, "You know the sales were having today, the proceeds above costs go to the poor. In response, plaintiff said, "Yes, I contribute to about everything that goes on here. The man stood there looking at her. Plaintiff then said to him, "You go do your job, cause I got to do mine. Plaintiff had never seen the man before and did not know the man, but believed him to be an employee of Sams Club.
7. Plaintiff then unlocked and opened her automobile door and started to get out. The man she had just talked to hit her on the head with a metal object and robbed her of her purse containing the cash remaining from her Sams Club payroll check.
8. As a result of the attack, plaintiff was seriously injured. Plaintiff was taken by EMS to Forsyth Memorial Hospital for emergency treatment. As a result of the assault and robbery, she sustained a skull fracture, left eye injury, fractured left cheek bone, broken jaw, bruises on her face and neck, left shoulder injury, and bruises on her back.
9. As a result of her injuries, plaintiff was disabled from work from October 3, 1997 until February 16, 1998, when she returned to part-time work duties at Sams.
10. At the time of the attack and robbery, plaintiff was on premises owned or controlled by defendant-employer, wearing the color required by the defendant-employer and she had parked her car in the area where most employees parked. Also, plaintiff believed that her attacker was an employee of the defendant-employer, causing her to be less guarded and less concerned for her safety even though she knew she was carrying cash from her paycheck. Sams Club did not provide any security personnel to monitor its parking lot for safety. There is no evidence in the record, however, to suggest that the attacker knew that plaintiff was carrying cash from the paycheck she had cashed.
11. Plaintiffs injury occurred on the employers premises where her job required her to be, at a reasonable time prior to work and while exiting her car to enter the building to report to work. Plaintiffs injury therefore occurred in the course of her employment.
12. The attack and robbery of plaintiff while at work was an unlooked for, untoward event not expected or designed by the plaintiff and thus an accident within the meaning of the Workers Compensation Act.
13. The nature of plaintiffs employment did not create a risk that plaintiff would be attacked and robbed by a stranger; therefore, plaintiffs injury did not result from a peculiar hazard of plaintiffs work. Although there is no evidence that the attack on plaintiff was personal, the attack did not result from plaintiffs work as a "demo person for defendant-employer and was not incidental to her employment.
14. Plaintiff has not yet reached maximum medical improvement.
15. Based on calculations derived from the Form 22 Wage Chart in evidence, plaintiffs average weekly wage is $162.54.
***********
Based on the foregoing findings of fact and stipulations, the Full Commission concludes as follows:
 CONCLUSION OF LAW
On October 3, 1997, plaintiff sustained an injury by accident to multiple body parts which occurred as a result of an attack by a third party in the course of her employment with defendant-employer. However, plaintiffs injury is not compensable because it did not arise out of her employment. Robbins v.Nicholson, 281 N.C. 234, 188 S.E.2d 350 (1972); N.C. Gen. Stat.97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim for workers compensation benefits is DENIED.
2. Each side shall pay its own costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
J. Howard Bunn participated in the Full Commissions review hearing, but retired prior to decision in this case.
J. HOWARD BUNN, Jr. CHAIRMAN