***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr. and the briefs and arguments of the parties. The appealing party has shown good grounds to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Royal Insurance Company is the carrier on the risk.
4. A Form 22 was submitted from which an average weekly wage could be determined.
5. Plaintiff's medical records relating to the January 27, 1994 were stipulated into evidence as Stipulated Exhibit 1A.
6. Plaintiff's medical records relating to the alleged injury on January 29, 1996 were stipulated into evidence as Stipulated Exhibit 1B.
7. Industrial Commission Forms relating to the claim arising on January 27, 1994 were stipulated into evidence as Stipulated Exhibit 2A.
8. Industrial Commission Forms relating to the alleged injury on January 29, 1996 were stipulated into evidence as Stipulated Exhibit 2B.
9. Plaintiff's Recorded Statement was stipulated into evidence as Stipulated Exhibit 3.
10. The Incident Investigation Report relating to the January 29, 1996 incident was stipulated into evidence as Stipulated Exhibit 4.
11. Employment information relating to plaintiff's employment was stipulated into evidence as Stipulated Exhibit 5.
12. The issues before the undersigned are: (i) whether plaintiff is entitled to further compensation relating to her January 24, 1994 injury; (ii) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on January 29, 1996; (iii) if so, what compensation, if any is due plaintiff?
 ***********
Based upon the evidence of record, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-nine (49) years old. Plaintiff began her employment with defendant-employer on February 15, 1990.
2. Plaintiff sustained a compensable injury to her back on January 27, 1994, which was accepted as compensable by defendant-employer.
3. Plaintiff's average weekly wage for the 1994 injury by accident was $238.00 yielding a compensation rate of $158.67. Plaintiff's average weekly wage for the 1996 injury by accident was $211.00 yielding a compensation rate of $140.67.
4. Plaintiff was initially treated by Gultekin Ertugrul, M.D., who referred her to an orthopaedic surgeon.
5. Plaintiff was treated by Dr. Timms who determined plaintiff had a bulging disc at L5-S1. Plaintiff was not a surgical candidate and on February 8, 1995 Dr. Timms released plaintiff with a three (3%) percent permanent partial disability to her back and restrictions of seated duty.
6. Plaintiff continued to experience problems and was seen by Neal Taub, M.D. Dr. Taub recommended a more active physical therapy, which included water therapy. The water therapy relieved plaintiff's pain.
7. Plaintiff was only approved for one (1) visit to Dr. Taub in August 1995 and it is her contention that she believed she could have no further medical treatment after that visit. Plaintiff continued to see Dr. Taub three more times through November 1995 at her own expense.
8. Plaintiff did not receive treatment for over four years when she presented to Douglas M. Burch, D.C., on March 13, 2000 with complaints of lower back pain and pain in her right leg. Plaintiff contended she had experienced pain since her 1994 fall. Dr. Burch, a licensed chiropractor, did not file for workers' compensation and treated plaintiff for her back pain. Dr. Burch stated that he believed that plaintiff's lower back pain was directly related to her fall in 1994.
9. T. Hemanth Rao, M.D., first saw plaintiff on May 8, 2000 on referral from Dr. Burch. Dr. Rao ordered an MRI, which indicated a ruptured disc at L5-S1. Dr. Rao referred plaintiff to Zach Gerger, M.D. for treatment for pain. Plaintiff was treated with injection therapy, which temporarily relieved the pain.
10. Plaintiff never mentioned back problems to defendant-employer from the time that she saw Dr. Taub in 1995 until she presented to Dr. Burch in 2000 due to her belief that defendant had denied all further treatment for her back injury after her initial visit to Dr. Taub.
11. Plaintiff continued to work her normal scheduled times up until January 29, 1996 although she continued to experience pain from her back injury. In fact, plaintiff has missed no uncompensated time from work as a result of the injury by accident of 1994.
12. Plaintiff did not seek authorization from defendant-employer or from the North Carolina Industrial Commission for further medical treatment relating to her January 27, 1994 claim. Further, plaintiff did not inform defendant-employer that she was continuing to seek medical treatment for her back.
13. Plaintiff continued to suffer back pain from her original compensable injury in 1994. Currently, plaintiff has severe back pain and a ruptured disc that may require surgery.
14. The greater weight of the evidence is that plaintiff's complaints of pain in her back and the ruptured disc at L5-S1 are causally related to her compensable injury by accident on January 27, 1994.
15. On January 29, 1996 plaintiff went to lunch at a local restaurant with a co-worker, Doris Helms. Plaintiff took a Styrofoam cup of iced tea with a lid and straw back to work with her. Plaintiff drank from the tea as she came back to work and suffered no ill effects. Plaintiff placed this iced tea cup in the break room used by employees.
16. The break room was maintained by the employer for the benefit of the employees. The employees were allowed to leave food and drink in the break room. During their shifts the employees were allowed to relieve their thirst by coming to the break rooms. In addition, there were restrooms located inside the break room that were available to the employees and the public.
17. About forty five minutes after placing the cup in the break room, plaintiff went to the break room to have a drink of tea. As plaintiff drank from the cup, she noticed the tea smelled of Mr. Clean. There was a bottle of Mr. Clean in the break room.
18. Plaintiff vomited repeatedly after ingesting the tea. She was taken to the emergency room where the she was treated for ingestion and inhalation of an unknown chemical. The diagnosis was that plaintiff suffered a reaction from the ingestion and the inhalation of an unknown chemical.
19. Mr. Ed Faulkner, the store manager was aware that plaintiff became sick after drinking the tea. He noticed the tea had a sour smell. Mr. Faulkner drove plaintiff to the hospital and later completed a Form 19.
20. There was no evidence that the tampering of plaintiff's drink arose from any malicious or misguided intent nor had plaintiff participated in any horseplay.
21. Plaintiff was treated by Erwin R. Elber, M.D. who treated plaintiff for irritation to the esophagus, bronchi, trachea and for inhaled vomit. Dr. Elber continued to treat plaintiff with anti-inflammatory for the trachea and esophageal irritation. Dr. Elber indicated that there was no infection causing the irritation to plaintiff's trachea, bronchi and esophagus. He concluded that the irritation in the lungs was due to a chemical reaction of some kind.
22. Plaintiff began to experience psychological problems such as trouble sleeping, nervousness and anxiety. Initially, plaintiff was able to function and was able to return to work, but her symptoms worsened over time.
23. On November 9, 1998 plaintiff first sought treatment from a therapist, Corrine Goodwin, M.S.W. Ms. Goodwin diagnosed plaintiff with post-traumatic stress disorder that was caused by the iced tea incident at work. Ms. Goodwin is of the opinion that this condition was disabling to plaintiff as of May 1999.
24. Dr. Gwen Perkins, a family practitioner, had begun treating plaintiff in September of 1997 and saw plaintiff on 5 separate occasions in the next year. Dr. Perkins agreed with Ms. Goodwin's diagnosis of post-traumatic stress disorder that was caused by the iced tea incident at work.
25. Dr. Tarras Onischenko performed psychological testing on plaintiff, reviewed the notes of Dr. Perkins and Ms. Goodwin, and met with plaintiff on several occasions. Dr. Onischenko agreed with the diagnosis of post-traumatic stress disorder as it was substantiated by the psychological tests.
26. The greater weight of the evidence establishes on January 29, 1996 when plaintiff ingested contaminated iced tea from her cup left in the break room, the injury she sustained was a result of an injury by accident arising out of the course of her employment, rather than being the result of any malicious or misguided intent by the public or any co-employee nor was it the result of horseplay with a co-employee.
27. Further, the greater weight of the evidence establishes that plaintiff developed post-traumatic stress disorder as a direct result of this injury by accident and as a result is unable to earn the same pre-injury wage in the same or any other type of employment since May 14, 1999. Plaintiff is not yet at maximum medical improvement from the post-traumatic stress disorder resulting from the January 29, 1996 injury by accident.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has proved by the greater weight of the evidence that her current complaints of pain relating to her back were causally related to her compensable injury by accident on January 27, 1994. However, since plaintiff did not seek authorization from defendant-employer or the Industrial Commission nor did she even give notice of her receiving medical attention for her back until 2000, plaintiff is not entitled to have defendants pay for medical treatment to her back until Dr. Rao's treatment of May 8, 2000. N.C. Gen. Stat. §§ 97-2(6); 97-25; 97-25.1;97-27.
2. Plaintiff has proved by the greater weight of the evidence that her injury of January 29, 1996, when she ingested contaminated tea left in the break room, is causally related to her employment as it arose out of and was in the course of employment and is therefore compensable. N.C. Gen. Stat. § 97-2(6), Harless v. Flynn, 1 N.C. App. 448, 162 S.E.2d 47
(1968).
3. An injury by accident is not considered the result of horseplay if the injured employee shows that she did not participate in the sportive acts of her fellow employees. There is no evidence that plaintiff was a participant in any form of horseplay. Chambers v. Union Oil Co.,199 N.C. 28, 153 S.E.2d 594 (1930), Wilson v. Town of Mooresville,222 N.C. 283, 22 S.E.2d 907 (1942).
4. There is no evidence of malicious or misguided intent, which resulted in the contamination of plaintiff's tea which arose from any personal animosity that had its origin outside of the employment. Robbinsv. Nicholson, 281 N.C. 234, 188 S.E.2d 350 (1972).
5. As a result of plaintiff's compensable injury on January 29, 1996 plaintiff received reasonable medical treatment that was reasonably necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
6. As a result of plaintiff's compensable injury by accident on January 29, 1996, plaintiff was totally disabled from May 14, 1999 to the present and continuing and is entitled to compensation from that date and continuing at the rate of $140.67 per week subject to a change in condition, return to work or further order of the Industrial Commission. N.C. Gen. Stat. § 97-29; Bridges v. Linn-Corriher Corp.,90 N.C. App. 397, 368 S.E.2d 388, cert. denied, 323 N.C. 171,373 S.E.2d 104 (1988).
7. As plaintiff has not reached maximum medical improvement, the issue of a permanent partial disability rating cannot be determined. N.C. Gen. Stat. § 97-31.
8. The hearing of this matter was not unreasonably defended, and therefore no attorney's fees should be assessed pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full
Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorney's fees approved herein, defendants shall pay plaintiff total disability compensation at the rate of $140.67 per week for the period beginning May 14, 1999 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. Any compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred and to be incurred for treatment rendered to plaintiff as related to her compensable injury by accident of January 27, 1994 as of May 8, 2000, and for her compensable injury of January 29, 1996, for so long as said treatment is designed to effect a cure, provide relief of her symptoms and/or lessen her period of disability. Said payments shall be made according to proper procedure as indicated by the Industrial Commission.
3. The issue of the permanent rating for plaintiff's lungs is reserved until plaintiff is determined to be a maximum medical improvement and has submitted to a pulmonary function test.
4. An attorney's fee of twenty-five percent (25%) of the amounts due plaintiff under Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the amounts due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel. Thereafter, every fourth check due plaintiff shall be paid directly to plaintiff's counsel.
5. Defendant shall pay the costs of this action.
This the 13th day of May 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER