* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, the employer employing the requisite number of employees to be bound under the provisions of said Act at the time of the alleged incident.
2. The alleged date of injury is November 2, 2004.
3. An employment relationship existed between plaintiff and defendant-employer on November 2, 2004.
4. Liberty Mutual Insurance was the carrier on the risk for defendant-employer on November 3, 2004.
5. Plaintiff has been treated by the following medical providers:
 a. Frank Horton Associates, LLC
 b. Carolina Counseling, Billy Jones, LCSW.
 c. Eastern Carolina Medical Center, Dr. Pankaj Vyas
 d. Dr. Edwin Hoeper of Goldsboro Psychiatric Clinic.
6. In addition, the parties stipulated into evidence the following:
 a. Packet of Industrial Commission forms and filings.
 b. Packet of medical records and reports
 c. Form 22 wage chart
7. The issues before the Commission are whether plaintiff sustained a compensable occupational disease or injury by accident arising out of and in the course of his employment with defendant-employer and, if so, to what benefits he is entitled to receive.
 * * * * * * * * * * * *Page 3 
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 62 years old as of the hearing before the Deputy Commissioner, began working for defendant-employer in 1998. During the six years he worked at the plant, his jobs were line checker and line driver. Plaintiff previously worked as a truck driver and retired from the Army after 23 years. In November 2004, his position with defendant-employer was second shift line driver.
2. On November 2, 2004, plaintiff reported for work and performed his regular job duties for about two hours before his supervisor instructed him to report to the receptionist in the plant lobby. At that time, plaintiff was unaware that a woman had come to the plant with a shotgun and had directed the receptionist to get him to come to the lobby by whatever means necessary. When plaintiff arrived there, the receptionist, who was an employee of a security company but who had no training in security issues, instructed him to turn and face the wall with his hands behind his back, and plaintiff complied. When plaintiff turned around to face the others present, he recognized Pam Arizona. Ms. Arizona was a friend of Sharon Palmer, plaintiff's former co-worker with whom he had engaged in an extra-martial affair for three years. Plaintiff ended the relationship with Ms. Palmer the previous July.
3. During the next several hours, Ms. Arizona pointed the shotgun at plaintiff or in his direction, threatened to kill him and threatened to shoot him in the groin while she repeatedly demanded that he admit to the terrible things she claimed he had done to Ms. Palmer. When plaintiff would not say anything, Ms. Arizona told the receptionists and later defendant-employer's general manager, John Bettner, who was brought in at her request, that plaintiff had *Page 4 
beaten and sexually assaulted Ms. Palmer. Ms. Arizona further stated that plaintiff's lawyer was not going to be able to defeat the criminal charges that had been filed against plaintiff because that night she was the "judge and jury." Ms. Arizona also was distressed that Ms. Palmer's employment with defendant-employer had been recently terminated, while plaintiff continued to work for the company. All present, including plaintiff, believed that Ms. Arizona intended to shoot plaintiff.
4. When Mr. Bettner asked Ms. Arizona what she wanted, Ms. Arizona stated that she wanted to reveal the truth about plaintiff to the company, to the media and to law enforcement. Eventually Ms. Arizona allowed Mr. Bettner to leave the lobby, after he told her that he was going to call the media.
5. Although Ms. Arizona claimed to be wired with explosives, which ultimately proved untrue, she did not otherwise threaten anyone except plaintiff.
6. Ms. Arizona ultimately ordered plaintiff to take off his clothes in front of the front door. As he was removing his shirt, plaintiff used his shirt to distract Ms. Arizona and ran out the front door. Plaintiff ran to the police waiting outside and was able to escape the situation unharmed.
7. After the incident, plaintiff was encouraged to go to the employee assistance program counselor, where he saw Nicholas Verykoukis, a licensed clinical social worker, on November 4, 2004. At that point, plaintiff appeared to be handling the situation reasonably well with only mild anxiety. However, at the next appointment on November 11, 2004, plaintiff was showing more serious signs of anxiety with intrusive memories of the event, problems sleeping and decreased appetite. Consequently, Mr. Verykoukis made arrangements for plaintiff to get counseling with another licensed clinical social worker, Billy Jones. *Page 5 
8. On November 22, 2004, Mr. Jones evaluated plaintiff with his wife present. Plaintiff was visibly fidgety and reported having a lot of flashbacks. It was Mr. Jones' impression that plaintiff had an acute stress disorder, so he treated plaintiff with counseling and therapy. Plaintiff advised both Mr. Jones and Mr. Verykoukis that his medical doctor was prescribing antidepressant medication for him. Despite treatment, plaintiff continued to experience symptoms of anxiety and had difficulty going into public places he previously enjoyed. Plaintiff's wife had to accompany him when he went out in public.
9. Mr. Jones provided counseling to plaintiff until May 9, 2004. By that time, plaintiff's condition had improved somewhat, but he continued to have flashbacks and dreams about the incident. Plaintiff's attorney referred him to Dr. Edwin Hoeper, a psychiatrist specializing in post-traumatic stress disorder, especially with combat veterans. Dr. Hoeper evaluated plaintiff on July 19, 2005 and diagnosed him with post-traumatic stress disorder (PTSD) along with major depression. Plaintiff's GAF score was 30, which indicated that he was not functioning well enough to work.
10. At his deposition, Dr. Hoeper expressed his opinion that plaintiff's PTSD was caused by being held hostage on November 10, 2004. Dr. Hoeper gave no medical opinion that plaintiff's job duties exposed him to a greater risk than the public not so exposed of developing PTSD.
11. Dr. Hoeper prescribed multiple medications to address the brain dysfunction causing plaintiff's nightmares, panic attacks, flashbacks and depression. Plaintiff improved further with the medications. By late 2006, plaintiff was inquiring about returning to work. At the March 13, 2007 appointment, Dr. Hoeper recommended that plaintiff try to find a job where he could work alone with minimum supervision and without much time pressure. *Page 6 
12. Plaintiff did not work from the day after the incident through the date of the hearing before the Deputy Commissioner on November 13, 2006.
13. Plaintiff claims and defendants deny that he developed PTSD as a result of compensable circumstances under the Workers' Compensation Act. Plaintiff's PTSD resulted from the incident when Pam Arizona pointed a shotgun at him and repeatedly threatened to shoot him or to kill him. The incident on November 2, 2004 occurred while plaintiff was on defendant-employer's premises and during working hours. The fact that plaintiff was threatened with a shotgun and alleged explosives was an unusual occurrence that interrupted his regular work routine. However, plaintiff's assailant did not work for the company and the dispute which brought her to the plant did not arise from circumstances relating to work performed there. Rather, Ms. Arizona was a friend of plaintiff's former girlfriend and Ms. Arizona was angry about what she believed he had done to her friend.
14. Although Ms. Arizona was also distressed about her friend losing her job, she did not direct her threats and accusations towards defendant-employer, Mr. Bettner or the two receptionists who were present. Ms. Arizona's expressed intent was to disclose to the company, to law enforcement and to the media what she believed plaintiff had done and to punish him for allegedly beating and sexually assaulting Ms. Palmer. The November 2, 2004 assault occurred as a result of a personal relationship between plaintiff and Sharon Palmer and due to Ms. Palmer's personal relationship with Pam Arizona. The fact that the assault occurred at the Caterpillar plant was because plaintiff's employment provided a convenient opportunity and location for the assault. The risk of this assault was a personal risk plaintiff brought to work and it was not an incident of his employment or connected to a risk logically associated with the nature of his employment. *Page 7 
15. The Commission finds that although plaintiff sustained an injury by accident in the course his employment on November 2, 2004, the accident did not arise out of his employment.
14. The Commission also finds that plaintiff's employment with defendant-employer did not cause or significantly contribute to the development of his PTSD, that plaintiff was not at an increased risk, as compared to the general public, of developing PTSD because of his job duties as a line driver, and that the PTSD was not due to causes or conditions characteristic of and peculiar to his employment as a line driver. Therefore, based upon the greater weight of the evidence of record, the Full Commission finds that plaintiff did not develop an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. To be compensable, an injury to an employee must arise out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6). In this case, plaintiff's injury was an accident within the meaning of the Workers' Compensation Act because it was an unexpected assault that occurred during plaintiff's working hours while performing his job on the premises of his employer. Therefore, plaintiff's injury was the result of an injury by accident arising during the course of his employment. Robbins v. Nicholson, 281 N.C. 234, 188 S.E.2d 350 (1972). At issue is whether plaintiff's injury arose out of his employment with defendant-employer. *Page 8 
2. An injury inflicted on an employee by an outsider as a result of a personal relationship and not because of a risk logically connected to the employment is not compensable, even if the employee was performing his work at the time and even if the employment provided a convenient opportunity for the attack. Robbins v. Nicholson, 281 N.C. 234,188 S.E.2d 350 (1972); Harden v. Furniture Co., 199 N.C. 733, 155 S.E.2d 728
(1930); Dildy v. MBW Invs., Inc., 152 N.C. App. 65, 566 S.E.2d 759
(2002).
3. The Supreme Court in Harden stated that there must be a causal connection between the conditions under which the work is performed and the resulting injury. The Court further explained:
 [I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.
Id. at 735, 155 S.E.2d at 729-30.
4. Because plaintiff's injury resulted from a personal relationship and the incident involving Ms. Arizona was not created by or reasonably related to his employment, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on November 2, 2005. N.C. Gen. Stat. § 97-2 (6);Robbins v. Nicholson, supra; Harden v. Furniture Co., supra; Dildy v.MBW Invs., Inc., supra. *Page 9 
5. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13, a claimant must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff is engaged; (2) the disease is not an ordinary disease of life to which the public is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment. Rutledge v. TutlexCorp. 308 N.C. 85, 301 S.E.2d 359 (1983).
6. In the present case, plaintiff did not contract a compensable occupational disease within the meaning of the law. N.C. Gen. Stat. § 97-53(13). Plaintiff failed to prove by the greater weight of the evidence that his employment caused or was a significant contributing factor in his development of PTSD, that the PTSD was characteristic of or peculiar to his employment, or that he was at an increased risk of developing this condition due to his work. Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
7. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his post-traumatic stress disorder. N.C. Gen. Stat. § 97-2 et seq.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 10th day of June, 2008. *Page 10 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________
DANNY LEE McDONALD
COMMISSIONER
S/___________________
PAMELA T. YOUNG
CHAIR