NOVELLA WILSON v. BOYD & GOFORTH, INC., AND LUMBER MUTUAL CASUALTY INSURANCE COMPANY.

(Filed 21 November, 1934.)

1. **Master and Servant F b—Evidence held sufficient to support finding that injury arose out of employment.**

There was evidence in this case tending to show that claimant, while performing the duties of his employment, was corrected by his foreman, and that another employee, not on duty at the time and whose place of work was some distance away, and who was intoxicated at the time, thereupon abused claimant and hit claimant with a hammer, that claimant ran away, but returned later to work, and that after his return to work the intoxicated fellow employee again got after him, and claimant, in attempting to get away, fell and broke his leg, and that not until then

did the foreman grab the intoxicated employee and force him to desist: *Held*, the evidence was sufficient to support the finding of the Industrial Commission that there was a causal connection between claimant's employment and the injury and its finding that the injury resulted from accident arising out of and in the course of claimant's employment.

**2. Master and Servant F i—**

The findings of fact of the Industrial Commission are conclusive upon the courts when they are supported by any competent evidence.

APPEAL by defendants, employer and carrier, from *Oglesby, J.,* at March Term, 1934, of BURKE. Affirmed.

An opinion in this case was rendered by Commissioner T. A. Wilson against the employer and carrier. Application for review was made by the employer and carrier to the full Commission.

The opinion of the full Commission, by J. Dewey Dorsett, Commissioner, 5 February, 1934, is as follows: "The only issue in this case hinges around the question dealing with whether or not the plaintiff sustained an injury by accident arising out of and in the course of his regular employment. The circumstances in the case are a little peculiar inasmuch as the plaintiff, while on the job doing his regular work as requested by his foreman, was injured when another employee of the same company, a man by the name of Gilbert, who was not working on this particular day and who was employed to work at a different location about a mile distant, being present and intoxicated, hit the plaintiff with a hammer when the plaintiff's foreman gave orders to him to do the work in a certain manner. The evidence shows that after being struck with the hammer the plaintiff ran and was followed by this man Gilbert. The evidence shows that later the plaintiff returned to the place he was working, and that Gilbert returned, and when the plaintiff saw this man Gilbert return he began running, fell and fractured his left leg, upper third fibula and middle third tibia. The defendants say that the accident did not arise out of and in the course of his regular employment.

"Upon all the evidence in the case, the Commission makes the following findings of fact: (1) That the plaintiff and defendant employer have accepted the provisions of the Compensation Law and the Lumber Mutual Casualty Insurance Company is the carrier.

"(2) That the plaintiff's average weekly wage was $6.00.

"(3) That the plaintiff sustained an injury by accident which arose out of and in the course of his regular employment on 4 August, 1933, and has been totally disabled since that date, and at the time of the hearing by the trial Commissioner was totally disabled.

"Conclusions of law: The evidence is clear that this man Gilbert, one of the employees of the defendant, the man who injured the plaintiff

with a hammer and later caused the plaintiff to injure himself in getting away from this man Gilbert, was a bad actor while drinking. The evidence shows that this man Gilbert first attacked the plaintiff at the time when the foreman of the plaintiff, the injured employee, was giving instructions to the employee as to how to do the work. At that particular time, the evidence shows that this man Gilbert said he'd make this Negro boy do this work in the right manner, and it was then he hit the Negro boy and injured him. We believe there is a causal connection between the plaintiff's employment in this case and the injury he sustained, and we believe, under all the circumstances, compensation ought to be awarded and that Commissioner Wilson should be affirmed and it is so ordered.

"Award: The plaintiff is awarded compensation at the rate of $7.00 per week for the period of his total disability, beginning with 4 August, 1933. The defendants will pay to the proper parties the necessary medical, surgical and hospital costs in this case after bills have been submitted to and approved by the Industrial Commission. The defendants will pay the costs of the two hearings."

The employer and carrier appealed to the Superior Court. The judgment of the Superior Court is as follows: "The above-entitled cause coming on for hearing and being heard by the undersigned judge of the Superior Court assigned to and holding the courts of the Sixteenth Judicial District at the regular March, 1934, Term, upon the appeal of the defendants from an award made to plaintiff by the North Carolina Industrial Commission, the court being of the opinion that the findings of fact made by the full Commission and the conclusions of law are correct:

"It is now, therefore, on motion of Mull & Patton, attorneys for the plaintiff, considered, ordered, and adjudged that the award of compensation to the plaintiff at the rate of $7.00 per week for the period of his total disability be and the same is hereby in all respects affirmed.

"Defendants pay the cost of action, to be taxed by the clerk. John M. Oglesby, Judge Presiding."

The employer and carrier excepted and assigned error and appealed to the Supreme Court. The exception and assignment of error is as follows: "Signing of the judgment sustaining findings of facts and conclusions of law of the North Carolina Industrial Commission."

*Mull & Patton and W. A. Self for plaintiff.*
*Walter Hoyle for employer and carrier.*

CLARKSON, J. The question involved: Did the court below commit error in signing the judgment sustaining the holding of the North Carolina Industrial Commission that the injury sustained was by accident

that arose out of and in the course of the employment of the plaintiff, as an employee of the defendant employer, within the meaning of the Workmen's Compensation Act? We think not.

The evidence in this case is to the effect: That Novella Wilson, a Negro boy, was working for his employer, Boyd & Goforth, Inc. He was working on a septic tank, rubbing on the wall. T. S. Ostwalt was foreman in charge of the work. One Gilbert, also an employee in another department, a white man who was intoxicated, came and sat down beside Ostwalt. About a minute after sitting there Ostwalt said something to Wilson, the Negro boy, "about putting water on the wall, telling him not to use so much water." Gilbert got up and went over to the Negro and began to curse him. The Negro said nothing. Gilbert cursed him right on and came back to where Ostwalt, the boss, was sitting, picked up a claw-hammer and went to where the Negro was "and hit him on the hip with it." The Negro came down off the scaffold and Gilbert came after him. The Negro ran and Gilbert picked up a rock and threw it at him. The Negro picked up a stick and Gilbert made him throw it down, and then the Negro ran and Gilbert got after him and threw a stick at him about six feet long. The Negro went back to work and Gilbert kept after him after he had gone back to work, and in the end, in trying to get away from Gilbert, the Negro fell off the edge of the tank and broke his leg.

The Negro, Wilson, testified: "Q. Did the bossman say anything to Mr. Gilbert about hitting you? A. No, sir.

"Q. Was your bossman there on the job when Mr. Gilbert hit you? A. Yes, sir; right there.

"Q. And he didn't say anything to Gilbert? A. No, sir."

Ostwalt, the boss, testified that he told Gilbert, the intoxicated man and the employee of the company in another department, to leave the Negro alone, but Ostwalt never took hold of Gilbert until after the injury to the Negro—Gilbert was cursing and pursuing the Negro three or four minutes. The Negro was under the direction and control of the boss of the corporation, and on duty. It was the bossman's duty to use or exercise reasonable care, or the care of an ordinarily prudent man, to protect the Negro in his peaceful occupation.

The Commission has found that "there is a causal connection between the plaintiff's employment in this case and the injury he sustained." We think there was evidence to support the finding, and this is binding on us.

In *Conrad v. Foundry Co.*, 198 N. C., 723 (726-7), is the following: "There must be some causal relation between the employment and the injury, but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is

one which ought to have been foreseen or expected. *Baum v. Industrial Commission,* 288 Ill., 516, 6 A. L. R., 1242. The decisions of various courts contain practical illustrations of the principle. For example, a claimant was foreman in a shoe factory; an employee, who had been repairing machines, approached the claimant in a dark room, placed his arms around the claimant's neck and drew his head against a lead pencil which injured the claimant's eye. *Markell v. Daniel Green Felt Shoe Co.,* 221 N. Y., 493, 116 N. E., 1060. Likewise, an employee, while engaged in his work, was struck in the eye by a missile thrown by a fellow-servant. *Leonbruno v. Champlain Silk Mills,* 229 N. Y., 470, 13 A. L. R., 522. Again, a workman was injured in a quarrel with another over interference with his work. *Pekin Cooperage Co. v. Industrial Commission,* 285 Ill., 31, 120 N. E., 530. In these cases the injury was held to be by accident arising 'out of' the employment. *Socha v. Cudahy Packing Co.,* 13 A. L. R. (Neb.), 513."

For the reasons given, the judgment of the court below is
Affirmed.