JANICE F. DILDY, Employee, Plaintiff v. MBW INVESTMENTS, INC., Employer, ZENITH INSURANCE COMPANY, Carrier; Defendants

No. COA01-510

(Filed 6 August 2002)

**Workers' Compensation— injury not arising from employment—employee shot at work by former boyfriend**

The Industrial Commission did not err by denying plaintiff employee workers' compensation benefits based on the fact that her injury did not arise out of her employment even though she was shot at her place of employment by her former boyfriend, because: (1) an injury is not compensable when it is inflicted in an assault upon an employee by an outsider as a result of a personal relationship between them, and the attack was not created by and not reasonably related to the employment; (2) plaintiff brought this personal risk with her from her domestic and private life and the motive that inspired the assault was likely to assert itself at any time and in any place; and (3) although the conduct of the employer contributed in some degree to plaintiff being shot while performing her job duties in the store, the fact the employer failed to call the police and refused to let plaintiff leave the store did not make the risk that her former boyfriend would come back and assault plaintiff a risk arising out of the nature of the employment.

Appeal by plaintiff from Opinion and Award entered 12 January 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 March 2002.

*Ralph G. Willey, P.A., by Ralph G. Willey, III, for plaintiff-appellant.*

*Morris York Williams Surles & Barringer, LLP, by C. Michelle Sain, for defendant-appellees.*

CAMPBELL, Judge.

Janice Dildy ("plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission") denying her claim for disability benefits under the Workers' Compensation Act ("the Act") for injuries she received at her place of employment when she was shot by her former boyfriend. We affirm.

In June 1996, plaintiff was employed as a cashier at an Amoco gas station and convenience store in Wilson, North Carolina, owned by MBW Investments, Inc. ("defendant-employer"). Plaintiff was responsible for operating the store's cash register, which primarily involved ringing up sales of gasoline and merchandise. The store also had a food counter which was generally manned by a different employee than the one operating the main customer counter and register.

Prior to her employment with defendant-employer, plaintiff had lived with her boyfriend, Vernon Farmer ("Farmer"). Due to the abusive nature of their relationship, plaintiff left Farmer in late 1995. Following the couple's separation, Farmer began threatening plaintiff. In March 1996, plaintiff was seen by a psychiatrist and a therapist for depression and anxiety caused by her fear of being attacked by Farmer. Plaintiff was advised to call the police and initiate legal action. Plaintiff subsequently obtained a restraining order against Farmer, but he continued to harass and threaten her. In early May 1996, plaintiff was voluntarily admitted to the psychiatric unit of a local hospital as a result of the anxiety caused by her fear of Farmer. Finally, on 18 June 1996, plaintiff reported to her psychiatrist that Farmer had blown up her current boyfriend's truck. Plaintiff's psychiatrist recommended that she consider relocating.

Despite the violent nature of their relationship and the fact that Farmer continued to threaten and harass her, plaintiff did not tell her co-workers or supervisors about her relationship with Farmer.

On 21 June 1996, Farmer came into the convenience store while plaintiff was working. Plaintiff was unaware of his presence in the store until he placed a six-pack of beer on the counter. After paying

for the beer, Farmer forcefully threw the six-pack at plaintiff, hitting her in the chest. Farmer then left the store. Plaintiff, frightened by Farmer's attack, began repeatedly exclaiming that Farmer was going to come back to the store to kill her. Plaintiff asked Ronnie Braziel ("Braziel"), the store supervisor on duty at the time, to call the police. Braziel told plaintiff to put the beer back in the beer cooler and to continue waiting on customers. As plaintiff continued working, she repeatedly asked Braziel to call the police because she was scared that Farmer would come back to the store to kill her. Braziel told plaintiff that Farmer would not be back and refused to honor plaintiff's requests to call the police.

Several minutes later, Farmer telephoned the store and plaintiff answered. Farmer threatened to come back to the store to kill plaintiff if she hung up the phone. Plaintiff reported this threat to Braziel while she was still on the phone with Farmer. Plaintiff asked Braziel to call the police or allow her to leave the store. Braziel refused plaintiff's request and told her to hang up the phone and resume waiting on customers. Approximately twenty minutes after he had first entered the store, Farmer returned with a handgun. Farmer walked up to the counter and shot at plaintiff three times, hitting her once in the right hand and once in the leg. Farmer later pled guilty to assault with a deadly weapon inflicting serious injury.

Plaintiff filed a claim for workers' compensation benefits for the injuries she received as a result of the shooting. Plaintiff's claim was denied by defendants. Prior to hearing, the parties stipulated that the provisions of the Act controlled the action, that an employer-employee relationship existed between plaintiff and defendant-employer, that defendant insurance company was the carrier, and that plaintiff had started missing time from work due to an injury sustained on or about 21 June 1996.

Plaintiff's claim was heard by a Deputy Commissioner on 10 August 1999. On 12 May 2000, the Deputy Commissioner entered an opinion and award denying plaintiff's claim. The Deputy Commissioner found that Farmer's assault on plaintiff was entirely personal to her and had nothing to do with her employment. However, the Deputy Commissioner did find that the employment contributed to the assault on plaintiff to some degree in that plaintiff's supervisor, knowing of the threats being made by Farmer, instructed plaintiff to continue working and did not call the police, thereby failing to take an opportunity to reduce the risk. Nonetheless, the Deputy Commissioner concluded that the risk of assault was not

attributable to the employment and that plaintiff's injuries did not arise out of her employment.

Upon appeal by plaintiff, the Full Industrial Commission upheld the denial of benefits to plaintiff. Commissioner Christopher Scott filed a dissenting opinion expressing his belief that the failure of plaintiff's supervisor to call the police directly increased the already known risk of assault facing plaintiff. Plaintiff appeals, arguing that the Commission erred in concluding that the shooting did not arise out of her employment. Defendants cross-assigned error to certain findings of fact made by the Commission. Due to our resolution of plaintiff's contentions on appeal, we need not consider defendants' cross-assignments of error.

In order to be compensable under the Act, an injury must result from an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6) (2001); *Hemric v. Manufacturing Co.*, 54 N.C. App. 314, 316, 283 S.E.2d 436, 438 (1981). In reviewing an opinion and award of the Industrial Commission, this Court's review is limited to a determination of whether the Commission's findings of fact are supported by any competent evidence and whether the Commission's conclusions of law are supported by such findings of fact. *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 652, 508 S.E.2d 831, 834 (1998). However, the determination of whether an accident arises out of and in the course of employment is a mixed question of law and fact, and this Court may review the record to determine whether the findings and conclusions are supported by sufficient evidence. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977).

Within the meaning of the Act, an accident is an unlooked for and untoward event which is not expected or designed by the employee and which interrupts the employee's normal work routine and introduces unusual conditions likely to result in unexpected consequences. *Hensley v. Cooperative*, 246 N.C. 274, 278, 98 S.E.2d 289, 292 (1957). An assault may be an accident within the meaning of the Act when it is unexpected and without design on the part of the employee who suffers from it. *Gallimore*, 292 N.C. at 402, 233 S.E.2d at 531; *see also Robbins v. Nicholson*, 281 N.C. 234, 188 S.E.2d 350 (1972). The phrase "in the course of the employment" refers to the time, place and circumstances under which an accidental injury occurs. *Robbins*, 281 N.C. at 238, 188 S.E.2d at 353. In the instant case, plaintiff was shot, without design on her part, during working hours while performing her duties as an employee on the premises of the employer. Thus,

plaintiff's injuries were the result of an injury by accident occurring during the course of employment. Accordingly, the only issue presented by this appeal is whether the shooting that injured plaintiff arose out of her employment with defendant-employer.

The phrase "arising out of the employment" refers to the origin or causal connection of the accidental injury to the employment. *See, e.g., Watkins v. City of Wilmington,* 290 N.C. 276, 225 S.E.2d 577 (1976). "[T]he controlling test of whether an injury 'arises out of' the employment is whether the injury is a natural and probable consequence of the nature of the employment." *Gallimore,* 292 N.C. at 404, 233 S.E.2d at 532-33. An injury "arises out of the employment" if a contributing proximate cause of the injury is a risk to which the employee was exposed because of the nature of the employment, and to which the employee would not have been equally exposed apart from the employment. *Roberts v. Burlington Industries,* 321 N.C. 350, 358, 364 S.E.2d 417, 423 (1988). "This risk must be such that it 'might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment.'" *Gallimore,* 292 N.C. at 404, 233 S.E.2d at 533 (quoting *Bartlett v. Duke University,* 284 N.C. 230, 233, 200 S.E.2d 193, 195 (1973)). "[The] causative danger must be peculiar to the work and not common to the neighborhood." *Id.* (quoting *Harden v. Furniture Co.,* 199 N.C. 733, 735, 155 S.E. 728, 730 (1930)). This test has been referred to as the "increased risk" analysis, and focuses on whether the *nature* of the employment creates or increases a risk to which the employee is exposed. *Roberts,* 321 N.C. at 358, 364 S.E.2d at 422. This "increased risk" analysis is different from the "positional risk" doctrine, "which holds that '[a]n injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of employment placed claimant in the position where he was killed.'" *Id.* (quoting 1 A. Larson, *The Law of Workmen's Compensation* § 6.50 (1984)). Our Supreme Court has chosen to follow and apply the "increased risk" analysis instead of relying on the more liberal "positional risk" doctrine. *Id.* (applying "increased risk" analysis in overruling a lower court decision which was based on application of the "positional risk" doctrine).

In *Robbins v. Nicholson,* 281 N.C. 234, 188 S.E.2d 350 (1972), our Supreme Court was faced with facts similar to those in the case *sub judice.* In *Robbins,* the claimants were the survivors of two deceased employees of a grocery store. The estranged husband of one of the employees entered the store and shot his wife and a co-employee.

The shootings had their origin in the husband's alcoholism and the domestic problems between him and his wife. The husband was jealous, had accused his wife of "running around" with her co-employee, and had gone to the store and threatened to kill them. He had also threatened to kill her employer if he continued to employ her. The Court reversed the Industrial Commission's award of benefits to the claimant-survivors, concluding that the risk of assault by the estranged husband was a personal risk the wife brought to the grocery store, and not one "occasioned by, incident to, or a condition of her employment." *Id.* at 241, 188 S.E.2d at 355. The Court further held that the employer "was under no duty to discharge [the wife] merely because her husband demanded he do so and . . . retaining her as an employee did not make the risk that [her husband] would assault her or one of her fellow employees a risk arising out of the nature of the employment." *Id.* Thus, the Court held that the assaults on the decedents were not accidents arising out of their employment. *Id.* at 242, 188 S.E.2d at 356.

In *Hemric v. Manufacturing Co.*, 54 N.C. App. 314, 283 S.E.2d 436 (1981), this Court was faced with a factual situation similar to both *Robbins* and the instant case. In *Hemric*, the claimant was shot by the boyfriend of one of his co-workers. Prior to the shooting, the co-worker had talked freely with the claimant and her other co-workers about the volatile and sometimes violent nature of her relationship with her boyfriend. When the co-worker tried to end the relationship, the boyfriend began threatening her and making harassing phone calls to her during business hours. Several days before the shooting, the boyfriend placed an obscene message about the co-worker on the front door of the business. As a result, several of the employees at the business feared for their personal safety from the boyfriend.

After repeated complaints that the co-worker was not adequately performing her job, and due to growing concerns that the boyfriend of the co-worker might cause some harm, the employer decided to fire the co-worker. The claimant was asked by his supervisor to keep a record of the co-worker's working hours so that the employer could use her tardiness as justification for firing her.

The claimant arrived at work the day of the shooting at 8:05 a.m. It was the claimant's custom to arrive at the office in the morning and then go to the post office to pick up the mail for the defendant-employer. However, since the claimant was keeping track of his co-worker's working hours, he remained at his desk until the co-worker's

arrival at 8:25 a.m. Upon the arrival of the co-worker, the boyfriend appeared from a hiding place in the office and fired three rifle shots at the co-worker, killing her. Before the boyfriend fled, he also shot the claimant four times, seriously injuring him.

The claimant in *Hemric* argued that, had it not been for his supervisor's instructions to keep a record of the co-worker's hours, the claimant would have been at the post office and not at the office at the time of the shooting. The Court affirmed the Commission's denial of benefits to the claimant, concluding that the shooting of the claimant, just like the shootings of the employees in *Robbins,*

> occurred on the premises not because the victim was performing the duties of employment at the time of the assault, but merely because he was present on the premises. The serious injuries which plaintiff sustained were caused by the vicious and unreasoned criminal act of Williams, not by an accident arising out of plaintiff's employment.

*Hemric,* 54 N.C. App. at 318, 283 S.E.2d at 439.

*Robbins* and *Hemric* are authority for the principle of law "that an injury is not compensable when it is inflicted in an assault upon an employee by an outsider as the result of a personal relationship between them, and the attack was not created by and not reasonably related to the employment." *Id.* at 318, 283 S.E.2d at 438-39. "This is true even though the employee was engaged in the performance of his duties at the time, for even though the employment may have provided a convenient opportunity for the attack it was not the cause." *Robbins,* 281 N.C. at 240, 188 S.E.2d at 354. For an injury inflicted in an assault by an outsider to be compensable, "[t]he assault must have had such a connection with the employment that it can be logically found that the nature of the employment created the risk of the attack." *Hemric,* 54 N.C. App. at 318, 283 S.E.2d at 439.

In the instant case, the evidence tends to show that plaintiff and Farmer were involved in an abusive relationship. Following their breakup, Farmer began threatening to harm plaintiff. After plaintiff obtained a restraining order against him, Farmer continued to threaten and harass her. The fact that Farmer blew up plaintiff's current boyfriend's truck further illustrates the danger posed by Farmer to plaintiff and those associated with her. Thus, Farmer's assault on plaintiff at the convenience store was entirely unrelated to the nature of plaintiff's employment; it did not stem from the type of work plain-

tiff was required to do for defendant-employer. It was a personal risk that plaintiff brought with her from her domestic and private life and the motive that inspired the assault "was likely to assert itself at any time and in any place." *Harden v. Furniture Co.*, 199 N.C. 733, 736, 155 S.E. 728, 730 (1930).

Plaintiff argues that the case *sub judice* is distinguishable on its facts from *Robbins* and *Hemric* in that in the case before us defendant-employer, through the supervisor on duty at the store when plaintiff was shot (Braziel), had knowledge of an outside peril that immediately endangered plaintiff, had an opportunity to protect plaintiff from this outside peril, and failed to act appropriately to reduce or eliminate the risk of peril, thereby making the assault a risk incident to the employment. However, in *Hemric*, this Court stated:

> Where the employee is injured in the course of employment by an outsider because of hate, jealousy, or revenge based on a personal relationship, the fact that the employer has knowledge of prior threats of death or bodily harm does not result in the injury's arising out of the employment.

*Hemric*, at 318, 283 S.E.2d at 439. Under the circumstances present here, Braziel was under no duty to call the police or let plaintiff leave the store merely because a customer had thrown beer at her and she had expressed fear that the customer would return to kill her. Braziel knew nothing about the nature of plaintiff and Farmer's relationship and had no basis for understanding and appreciating the seriousness of the threat posed by Farmer. The fact that Braziel failed to call the police and refused to let plaintiff leave the store did not make the risk that Farmer would come back and assault plaintiff a risk arising out of the nature of the employment. *See Robbins*, 281 N.C. at 241, 188 S.E.2d at 355. While we agree with the Commission that the conduct of Braziel contributed in some degree to plaintiff being shot while performing her job duties in the store, the fact that Braziel did not take plaintiff seriously when she warned that Farmer would come back to the store to kill her was not a risk arising out of the nature of plaintiff's employment.

Plaintiff further argues that the Supreme Court's decision in *Wilson v. Boyd & Goforth, Inc.*, 207 N.C. 344, 177 S.E. 178 (1934), compels the conclusion that the shooting of plaintiff in the instant case arose out of her employment. In *Wilson*, the plaintiff-employee was rubbing down the wall of a septic tank in the regular course of

**DILDY v. MBW INVS., INC.**

[152 N.C. App. 65 (2002)]

his employment and in the presence of his foreman. An intoxicated co-employee who worked in another department for the defendant-employer came and sat down beside the foreman who was supervising plaintiff's work. The foreman instructed the plaintiff not to use so much water on the wall of the septic tank. The co-employee then got up and went over to the plaintiff and starting cursing at him. The plaintiff said nothing in response. The co-employee then picked up a claw-hammer and hit the plaintiff on the hip. The plaintiff came down off his scaffold and the co-employee came after him. The two men threw rocks and sticks back and forth at one another. The plaintiff then resumed his work, but the co-employee kept after him. Finally, the plaintiff fell off the edge of the septic tank and broke his leg in an attempt to get away from the co-employee. The Court affirmed the Industrial Commission's conclusion that "there is a causal connection between the plaintiff's employment in this case and the injury he sustained." *Id.* at 347, 177 S.E. at 179-80.

The facts of the case *sub judice* are readily distinguishable from those in *Wilson*. In *Wilson*, the assault on the plaintiff was directly related to his employment in that the perpetrator of the assault was not a complete outsider, but rather a co-employee, and the origin of the assault lay in the perceived ineffective manner in which the plaintiff was performing his employment. Here, plaintiff was assaulted by a complete outsider to her employment, and the risk of the assault lay in the domestic problems between plaintiff and the perpetrator and not in the nature of her employment. Thus, *Wilson* is not controlling.

In sum, notwithstanding the events at the convenience store on the day of the shooting, the risk to plaintiff that her former boyfriend would shoot her was not one which a rational mind would anticipate as incident to her employment with defendant-employer. The risk that her boyfriend would carry out his previous threats against her was a hazard common to the neighborhood and not peculiar to her employment; it was independent of the relation between employer and employee.

Although "[t]he Workers' Compensation Act 'should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation," *Roberts v. Burlington Industries*, 321 N.C. 350, 359, 364 S.E.2d 417, 423 (1988) (quoting *Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E.2d 596, 599 (1955)), "the rule of liberal construction cannot be employed to attribute to a provision of the Act a meaning foreign to the plain and

unmistakable words in which it is couched." *Id.* (quoting *Henry v. Leather Co.*, 231 N.C. 477, 480, 57 S.E.2d 760, 762-63 (1950)). "The Act was not intended to establish general insurance benefits." *Id.* To grant compensation in the instant case would effectively remove the "arising out of the employment" requirement of the Act. *Id.* at 360, 364 S.E.2d at 424.

Accordingly, we find that the evidence was sufficient to support the Commission's findings of fact and that these findings support the Commission's denial of plaintiff's claim for workers' compensation benefits since plaintiff's injury did not arise out of her employment.

Affirmed.

Judges GREENE and McGEE concur.