***********
In accordance with the directives of the North Carolina Court of Appeals and upon review of the competent evidence of record, the Full Commission amends part of the prior Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on April 6, 1999, the date of the alleged injury by accident.
3. Plaintiff's average weekly wage was $670.00.
4. The parties submitted medical records, which were attached to the Pre-trial Agreement, from the following providers: (a) James D. Kindl, M.D., (b) Robert E. "Butch" Cassidy, M.D., and (c) Rehabilitation Services of Danville.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was born on February 16, 1959. He completed high school and received training in electrical work while in service in the Marine Corps. Plaintiff has worked as an electrician for 22 years and he began working for defendant-employer in September 1998.
2. On April 6, 1999, plaintiff was working for defendant-employer at a job-site. Plaintiff and another employee were assigned to remove some old equipment and its electrical wiring so that the equipment could be sold to another company and reinstalled with the same wire. Thus, plaintiff and the other employee had to remove the wire without damaging it so it could be reused. This assignment had to be completed by the end of the day. Although plaintiff asked that another person be assigned to assist with this project, no other personnel were available.
3. To remove the wiring, plaintiff worked on a lift near the ceiling approximately 20 feet above the ground. To pull this wire out of the conduit, plaintiff reached down across his body and pulled the wire starting at or below the level of his knee. He then pulled the wire across his body and over his head, using both arms to pull the wire. The third time plaintiff pulled the wire in this manner, he felt a pop and pain in his right shoulder.
4. Plaintiff reported his injury to a supervisor and was told to see a physician. Plaintiff initially came under the care of Dr. James Kindl, and later was seen by Dr. Robert Cassidy. An MRI and x-rays were obtained and on May 9, 1999, Dr. Cassidy assessed plaintiff with a rotator cuff strain/sprain with tendonitis/bursitis. When conservative treatment failed to bring relief, plaintiff eventually underwent surgery on his right shoulder.
5. Fred Redman, an electrician and supervisor at defendant-employer, stated that pulling wire is a normal part of an electrician's job duties and is performed by electricians on a daily basis. An electrician must be careful not to damage the wire when pulling in new wiring which requires the same amount of force as pulling out old wire. Mr. Redman stated that it was a common occurrence that a wire way be located 20 feet in the ceiling and that he has pulled wire in the same manner in which plaintiff described in his testimony. Mr. Redman testified that there was nothing unusual about the manner in which plaintiff was pulling wire on April 6, 1999.
6. Pulling wire through a conduit was part of plaintiff's usual duties as an electrician for defendant-employer and was performed on a daily basis as a part of installing and removing wire.
7. Pulling wire to remove it from a conduit, which must be saved for installation in another machine, requires the same effort and care to not damage the wire as pulling wire through a conduit in an initial installation.
8. There is no evidence in the record that the wire plaintiff was pulling on April 6, 1999 was heavier than any other wire he had pulled in the past. There is no evidence in the record that plaintiff exerted an unusual degree of force when pulling the wire out of the conduit on April 6, 1999.
9. Plaintiff's testified that he had never had to pull wiring intact from anywhere before April 6, 1999. Plaintiff's testimony is not credible regarding the unusualness of the incident, as he would have used the same motions to pull wire through a conduit in an initial installation without damaging the wire or being able to cut it into smaller pieces. Plaintiff did admit that pulling out wire is a normal routine part of an electrician's job duties. Therefore, the Full Commission gives little weight to plaintiff's testimony regarding the unusualness of the situation. Greater weight is given to the testimony of Fred Redman who stated that there was nothing unusual about pulling intact wire through a conduit.
10. Plaintiff's testimony that he was in an awkward position when pulling the wire from this machine is not credible. The Full Commission gives greater weight to the testimony of Fred Redman who stated that it is common for a wire way to be located 20 feet up on the ceiling. Electricians regularly pull wire in cramped or awkward positions. Therefore, pulling wire in an awkward position is a regular part of the job duties of an electrician.
11. The evidence fails to show that plaintiff's right shoulder injury was caused by an accident arising out of and in the course of his employment with defendant-employer. The greater weight of the evidence is that plaintiff was performing the usual tasks of an electrician in the usual way and there was no interruption of his regular work routine.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. A compensable injury "shall mean only injury by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6). The rule of causal relation is intended to limit the scope of the Workmen's Compensation Act. It is to provide benefits for industrial injuries, rather than branching out into the field of general health insurance benefits. Duncan v. City of Charlotte, 234 N.C. 86, 90-91,66 S.E.2d 22, 25 (1951). Accord Dildy v. MBW Investments, Inc.,152 N.C. App. 65, 74, 566 S.E.2d 759, 765 (2002).
2. An accident is defined as "(1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause". Norris v. Kivettco, Inc., 58 N.C. App. 376,378, 293 S.E.2d 594, 595 (1982). There must be an "interruption of the work routine and the introduction thereby of unusual conditions likely to result in unpredicted consequence". Davis v. Raleigh Rental Ctr.,58 N.C. App. 113, 116, 292 S.E.2d 763, 766 (1982). In contrast, "if an employee is injured while carrying on his usual tasks in the usual way the injury does not arise by accident." Lineback v. Wake County Bd. OfCommissioners, 126 N.C. App. 678, 681, 486 S.E.2d 252, 254-55 (1997).
3. Plaintiff has failed to prove by the greater weight of the evidence, that he sustained an interruption of his normal work routine resulting in an injury by accident arising out of and in the course of his employment with the defendant-employer on April 6, 1999. N.C. Gen. Stat. § 97-2(6).
4. The Full Commission gives greater weight to the testimony of Fred Redman that plaintiff was performing the usual tasks of an electrician in the usual way and there was no interruption of his regular work routine than to the testimony of plaintiff. The Full Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. Morgan v. Thomasville Furniture Industries, 2 N.C. App. 126,162 S.E.2d 619 (1968).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and is hereby Denied.
2. Each side shall pay their own costs.
This the ___ day of January 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER