***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Worker's Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The date of plaintiff's alleged injury by accident is August 3, 2000.
4. At the time of the compensable injury by accident, the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act and there was an employee-employer relationship between plaintiff and defendant-employer with the employer being insured by Royal and Sun Alliance.
5. Plaintiff-employee's compensation rate at the time of his injury was $286.64.
6. The depositions of Dr. Ibrahim Oudeh, Dr. Jon Kolkin and Dr. Kevin Speer were submitted and received into evidence.
7. The parties also stipulated into evidence the following documents:
• Stipulated Exhibit 1 — A set of medical records;
• Stipulated Exhibit 2 — Industrial Commission Forms;
• Stipulated Exhibit 3 — Accident Report;
• Stipulated Exhibit 4 — Job Description;
• Stipulated Exhibits 5, 6, and 8 — Discovery Responses;
• Stipulated Exhibit 7 — Employment Security Commission Documents.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff was 45 years of age on the date of hearing before the deputy commissioner. He worked for defendant-employer for 21 years. Plaintiff had worked as a fork truck bin picker since January of 1999.
2. As a fork truck bin picker, plaintiff operated a tow motor to move large beams of yarn. These beams were metal pieces 6 to 7 feet long. The tow motor had two arms, which were used to pick up the beam. In addition, plaintiff sometimes had to turn or rotate these beams by hand so that attached tickets would be visible.
3. Plaintiff was also employed by Travel World/Pep Mart, Inc. as a janitor from September 3, 1999 while working for defendant-employer. Plaintiff's duties as a janitor included sweeping, mopping, vacuuming, emptying trashcans that weighed approximately 10-12 pounds, and cleaning out bathrooms with a hose.
4. Plaintiff alleged that on August 3, 2000 he felt a stinging sensation in his right wrist after turning a beam. Plaintiff was doing his regular job duties at the time of the incident and indicated that nothing out of the ordinary had happened. Bernice Wynn indicated on the Supervisor's Accident Investigation Report that plaintiff was performing his normal job duties and that "strain or undue force is not required to turn the beam."
5. On September 18, 2000, Plaintiff was seen by Dr. Richard G. Juberg of Harnett Family Medicine. Dr. Juberg's notes indicate that Plaintiff reported that he "twisted his right wrist while unwrapping supplies" and had burning radicular pain since. Dr. Juberg initially assessed "tenosynovitis" of the right wrist, and prescribed splints, Vioxx, and assigned light duty for 10 days.
7. Plaintiff returned to see Dr. Juberg on September 28, at which time Dr. Juberg injected the tender areas with a Betadine skin prep, Lidocain and another substance (illegible in the medicals). Dr. Juberg recommended that plaintiff use the splint while working for the next couple of weeks.
8. On plaintiff's visit of October 5, 2000, Dr. Juberg noted that the injection seemed to have helped plaintiff's condition. Plaintiff reported only mild soreness, although he complained of some stinging and burning in his forearm at rest. Plaintiff also reported that he was able to do his regular job. On that visit, Dr. Juberg's assessment was "tendonitis of extensor tendon of his thumb and extensor carpi radialis and/or carpal metacarpal joint, #1."
9. Dr. Juberg saw plaintiff in follow-up on October 20 and 31, 2000. On October 31, plaintiff complained of pain in his left shoulder, apparently due to not using his right arm, and overusing his left arm at work. Dr. Juberg found that plaintiff's left shoulder demonstrated mild tenderness in the pectoralis muscle with flexion.
10. At plaintiff's November 21, 2000 visit, Dr. Juberg recorded his assessment of "mild residual extensor wrist tendonitis on the right side." At that time, Dr. Juberg found that plaintiff had a normal range of motion in the wrist, with no edema or erythema. His grip strength was 5/5 and plaintiff had normal sensory. Dr. Juberg released plaintiff to return to his regular job with no restrictions.
11. Dr. Juberg is now deceased and therefore could not testify in this case. However, his medical records indicate that he diagnosed plaintiff with tendonitis/tenosynovitis, treated him and released plaintiff to return to work full duty on November 21, 2000.
12. Defendant-employer's plant closed on November 23, 2000. Plaintiff filed for and received 13 weeks of unemployment benefits on February 26, 2001. Plaintiff certified that he was capable of working and willing to accept suitable work at that time. Plaintiff cited the reason for separation as "lack of work".
13. Plaintiff continued working at Travel World after his job with defendant-employer ended, until he was fired. Plaintiff admitted that the reason he was given for his termination from Travel World was because he had a bad attitude and was being lazy.
14. After the Swift Denim plant closed, plaintiff also worked at a funeral home. His duties there included carrying flowers and arranging chairs for funerals.
15. Plaintiff did not seek further treatment for his wrist until May 23, 2001, six months after his last employment with defendant-employer. At that time, he went to see Dr. Kevin Speer at Garner Orthopaedic and Sports Medicine Specialist, with complaints of left shoulder pain. Dr. Speer examined Plaintiff on this one occasion. Physical examination of the shoulder showed a full passive range of motion, and that the rotator cuff was fine. X-rays of the left shoulder showed severe osteoarthritis of the AC joint.
16. Dr. Speer indicated that plaintiff's arthritis could become symptomatic due to activities of everyday life. The activities that plaintiff had performed while working as a janitor and at the funeral home could easily have caused his shoulder pain. Plaintiff's shoulder pain could have been caused by plaintiff's overuse of that shoulder to compensate for his right wrist pain. Dr. Speer concluded that the shoulder would not be the focus of any treatment, as it would resolve when plaintiff stopped overcompensating for his right wrist pain. He prescribed Voltaren, an anti-inflammatory medicine and referred plaintiff to the Raleigh Hand Center, for further evaluation of the right wrist.
17. On July 3, 2001, plaintiff was examined by Dr. Jon Kolkin of the Raleigh Hand Center. Dr. Kolkin assessed plaintiff with possible DeQuervain's of the right wrist and that plaintiff was negative in the carpal tunnel region. Dr. Kolkin explained DeQuervain's is a condition of tendonitis in the wrist, involving a specific tendon on the thumb side. Dr. Kolkin was unable to state with certainty whether plaintiff suffered from De Quervain's of the right wrist and whether that was caused by the incident of August 3, 2000 as described by plaintiff or by his duties with defendant-employer.
18. On the referral of his attorney, plaintiff was examined by Dr. Ibrahim N. Oudeh, a primary care physician specializing in nephrology and internal medicine, on August 26, 2002. Plaintiff complained of right wrist and left shoulder pain. Although he testified about possible carpal tunnel syndrome, Dr. Oudeh's notes do not reflect any diagnosis of a cause of plaintiff's pain at that time. However, on August 26, 2002, Dr. Oudeh wrote a note that in his opinion, plaintiff might need to be out of work for 4 to 5 months to recover from his shoulder and wrist injuries. He referred plaintiff for physical therapy.
19. Plaintiff was seen in follow-up by Dr. Oudeh. Dr. Oudeh continued to assess him with right wrist and left shoulder pain, as well as depression related to his pain complaints. In May 2003, plaintiff underwent nerve conduction studies, which indicated no atrophy. Following those studies, Dr. Oudeh assessed carpal tunnel syndrome in plaintiff's right wrist. Although Dr. Oudeh is of the opinion that the initial injury could have set in motion the inflammatory process that caused the carpal tunnel syndrome, he was unable to give an opinion to a reasonable degree of medical certainty.
20. The greater weight of the evidence shows that plaintiff did not suffer an interruption of his work routine or an injury by accident on August 3, 2000 as he was performing his job in the usual way when he felt a pull in his wrist. The August 4, 2000 note of the plant nurse indicated that plaintiff complained that he was pulling on a warp and felt a pull in his right wrist. Dr. Kolkin's note does not reference an unusual event in the history plaintiff gave him. Plaintiff did not describe any specific injury or incident when reporting his history to Dr. Oudeh. It was not until the hearing before the deputy commissioner that plaintiff alleged that the beam became stuck and required extra pressure to turn the beam. Plaintiff's initial reports of the circumstance are more reliable and are given greater weight than the contradictory position he offered at the hearing before the deputy commissioner.
21. Plaintiff has failed to prove by the greater weight of the evidence that the pain in his right wrist and left shoulder is the result of the alleged injury by accident of August 3, 2000 or his employment with defendant-employer. Although Dr. Juberg diagnosed plaintiff with tendonitis/tenosynovitis, he treated and released plaintiff to return to work full duty on November 21, 2000. Plaintiff did not seek medical treatment for his right wrist pain until 6 months after his employment with defendant-employer terminated. Dr. Speer, Dr. Oudeh, and Dr. Kolkin are unable to state to a reasonable degree of medical certainty that plaintiff's complaints of right wrist pain and left shoulder pain are related to the alleged injury by accident or to his job as a fork truck bin picker. No evidence was presented that a fork truck bin picker is at an increased risk for developing DeQuervain's tenosynovits, tendonitis, arthritis or carpal tunnel syndrome.
22. Plaintiff has failed to prove that he is disabled as a result of his current medical condition. He was released to return to work without restrictions by Dr. Juberg on November 21, 2000. Plaintiff testified that he worked sporadically in 2001 and 2002. He drove a truck for a house-mover on several occasions. Plaintiff admitted that he was fired from his job as a janitor at Travel World/PepMart, Inc for reasons unrelated to his wrist and shoulder pain. He worked at the funeral home during part of this time. Plaintiff testified that he quit the funeral home job, and there is no evidence that this was related to his injuries.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. A compensable injury "shall mean only injury by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6). The rule of causal relation is intended to limit the scope of the Workmen's Compensation Act. It is to provide benefits for industrial injuries, rather than branching out into the field of general health insurance benefits. Duncan v. City of Charlotte, 234 N.C. 86, 90-91, 66 S.E.2d 22, 25
(1951). Accord Dildy v. MBW Investments, Inc., 152 N.C. App. 65, 74,566 S.E.2d 759, 765 (2002).
2. An accident is defined as "(1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause". Norris v. Kivettco, Inc.,58 N.C. App. 376, 378, 293 S.E.2d 594, 595 (1982). There must be an "interruption of the work routine and the introduction thereby of unusual conditions likely to result in unpredicted consequence". Davis v. RaleighRental Ctr., 58 N.C. App. 113, 116, 292 S.E.2d 763, 766 (1982). In contrast, "if an employee is injured while carrying on his usual tasks in the usual way the injury does not arise by accident." Lineback v. WakeCounty Bd. Of Commissioners, 126 N.C. App. 678, 681, 486 S.E.2d 252,254-55 (1997).
3. Plaintiff has failed to prove by the greater weight of the evidence, that he sustained an interruption of his normal work routine resulting in an injury by accident arising out of and in the course of his employment with the defendant-employer on August 3, 2000. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff failed to establish that his employment as a fork truck bin picker significantly contributed to or was a significant causal factor in the development of his right wrist and left shoulder pain.Rutledge v. Tultex Corp., 308 N.C. 85, 89, 301 S.E.2d 359, 362-363
(1983). The evidence fails to establish that plaintiff's alleged DeQuervain's tenosynovitis, arthritis and carpal tunnel syndrome were caused by or significantly contributed to by his job duties with defendant-employer or that plaintiff's job duties with defendant-employer exposed him to a greater risk of developing DeQuervain's tenosynovitis, arthritis and carpal tunnel syndrome, than the general public not so exposed. Therefore, plaintiff is not entitled to recover benefits under the Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13); Rutledge v.Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983); Norris v. DrexelHeritage Furnishings, Inc., 139 N.C. 620, 534 S.E.2d 259 (2000); Futrellv. Resinall, 151 N.C. App. 456, 566 S.E.2d 181, affirmed, 357 N.C. 158,579 S.E.2d 269 (2003).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law plaintiff's claim must be and is hereby denied.
2. Each side shall bear it's own costs.
This the 13th day of March 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
DCS/llc