* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission rejects the Opinion and Award of Deputy Commissioner Donavan and enters the following Opinion and Award. *Page 2 
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The plaintiff-employee is Dianna Floyd.
2. Plaintiff alleges that the defendants are Executive Personnel Group and Penco Products, Inc.
3. Defendant Executive Personnel Group is insured by National Benefits America, Inc. and defendant Penco Products, Inc. is insured by ACE USA/ESIS.
4. Defendants regularly employ three or more employees and are bound by the North Carolina Workers' Compensation Act.
5. The employer/employee relationship at the time of the auto collision that gives rise to this claim is at issue in this case.
6. All parties are properly before the Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
7. This cause is subject to the North Carolina Workers' Compensation Act.
8. Plaintiff's average weekly wage while employed for Executive Personnel Group was $360.00.
9. At the time of the hearing before the deputy commissioner, the parties agreed to bifurcate the issues in this case and address only the issue of liability. Accordingly, the issue before the undersigned is whether, at the time of plaintiff's injury by accident on June 17, 2004, plaintiff was employed by either/or Executive Personnel Group or Penco Products and whether plaintiff's injury arose out of and in the course of the employment.
 * * * * * * * * * * * *Page 3 EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Industrial Commission Forms
 b. Subsequent to the hearing before the deputy commissioner the parties submitted two additional documents to be added to Stipulated Exhibit #1: Letter of denial of plaintiff's claim from defendant Penco to plaintiff and Consent agreement dismissing AIG as a defendant-carrier.
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: Accident report
 b. Plaintiff's Exhibit #2: Plaintiff's application for employment with Penco
 c. Plaintiff's Exhibit #3: Fax of Penco's appointment for plaintiff for a physical examination
 d. Defendants' Exhibit #1: Chart of hiring dates and physical dates
 e. Defendants' Exhibit #2: Employment packet for permanent employment with Penco.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 48 years old. Plaintiff began working for defendant Executive Personnel Group (EPG) in April 2003. EPG is a temporary agency supplying temporary workers to various companies in need of *Page 4 
temporary help. One of the businesses obtaining workers from EPG is defendant Penco Products, Inc. (Penco). Pursuant to the arrangement between the two companies, Penco paid a fee of approximately 32% above the wages paid to the temporary workers. In return, EPG paid the temporary workers an hourly fee. Out of the fee above the amount of the workers' hourly wages, defendant EPG paid its payroll, workers' compensation insurance, administrative matters and obtained a reasonable profit. EPG covers workers' compensation for all temporary employees it provides to Penco if the injury arises out of the employment and meets all elements of a workers' compensation claim.
2. After a certain number of hours, usually between 500 to 1,500 hours depending on the particular Penco plant manager, EPG temporary employees become eligible to be hired as permanent employees by Penco. For a temporary worker supplied by EPG to become a permanent employee of Penco, the employee must apply for permanent employment with Penco and a Penco supervisor makes a determination as to the worker's eligibility depending on need and ability. EPG has no input in the decision by Penco to make one of EPG's temporary employees a permanent employee.
3. Eleanor Gardner, Human Resource manager at Penco, was the decision maker on all hiring and firing. All applicants for permanent employment at Penco were required to undergo a pre-employment physical and drug test as one of the steps before being hired. After passing the physical and drug screening, insurance paperwork and tax forms had to be completed and the prospective employee was required to provide written acknowledgement of their receipt of the employee handbook. If an applicant failed to or refused to sign any of these documents they could not become a permanent Penco employee. *Page 5 
4. In February of 2004, plaintiff completed an application for permanent employment with defendant Penco. In June 2004, plaintiff and two co-workers, Oscar Smaw and Roy Moody, were approached by their Penco supervisors informing them that they would have to complete a drug screen and physical as part of the Penco employment application process.
5. Penco scheduled the physicals with Dr. Domingo Rodriguez-Cue in Williamston, North Carolina. Dr. Rodriguez-Cue has been the plant physician since the plant opened in 2001. Plaintiff's original appointment with Dr. Rodriguez-Cue was scheduled for June 14, 2004, but plaintiff switched appointments with Oscar Smaw due to a conflict in her schedule and was seen on June 17, 2004, instead. Defendant Penco had no problem with the two workers switching appointment times. Plaintiff understood that the physical would be on her own time and that she would not be paid for attending or for the mileage incurred by attending the exam. Defendant EPG did not require plaintiff to undergo the physical examination or drug testing to maintain her temporary employment. Neither Mr. Smaw nor Moody were paid for their time or for mileage expense incurred by attending their exams.
6. While passing the physical and drug test qualified an applicant for employment, actual employment is based on the company's needs. In some instances, the company's order backlog will go down after the employment process has begun causing Penco to either reduce its work force or delay or eliminate the hiring of additional permanent employees. There have been occasions where applicants have completed and passed the pre-employment physical and drug screening, but were never hired. Although it was plaintiff's understanding that she was going to be hired as a permanent employee by Penco effective June 21, 2004 if she passed the physical *Page 6 
and drug screen, the greater weight of the evidence shows that the successful completion of Penco's pre-employment physical and drug test did not guarantee employment.
7. Mr. Smaw testified that he was never given the impression by Deborah Brown or any Penco representative that he would be hired as a permanent Penco employee if he passed the pre-employment physical and drug test and no starting date or salary was ever discussed. Mr. Smaw underwent his pre-employment physical on June 14, 2004, after which he continued to work at Penco on the second shift for which he continued to be paid by EPG until he was added to the Penco payroll on June 21, 2004. As part of the hiring process Mr. Smaw confirmed that in addition to passing the pre-employment physical and drug test, he had to fill out insurance forms, tax forms, and sign a receipt of the Employee Handbook. The paperwork was not offered to him for completion until his first day of work on June 21, 2004.
8. The hiring process at Penco was further corroborated by Mr. Roy Moody. He testified that he was never given the impression that if he passed the pre-employment physical and drug test that he would be hired. He was never given a date he would be hired or a specific pay rate at which he would be hired. Mr. Moody could not recall whether he was told that the pre-employment physical was part of the hiring process, but was hoping it was the next step. Mr. Moody went to his June 17, 2004 pre-employment physical on his own time, after which he reported to the second shift at Penco for which he was paid by EPG. He remained on EPG's payroll until June 21, 2004, when he completed the remaining paperwork and was hired by Penco.
9. On June 17, 2004 at 10:50 a.m., plaintiff received her pre-employment physical examination and drug test in Dr. Rodriguez-Cue's office, not on the premises of Penco or EMG. Plaintiff drove her personal car on her own time to the examination and testing. On the way *Page 7 
home from her physical, plaintiff was involved in a motor vehicle accident at 12:51 p.m. near Williamston, North Carolina on Highway 125.
10. Based upon the greater weight of the evidence, the undersigned find that an employer-employee relationship did not exist between plaintiff and defendant Penco at the time of plaintiff's injury on June 17, 2004.
11. The greater weight of the evidence establishes that an employer-employee relationship did exist between plaintiff and defendant EPG at the time of plaintiff's June 17, 2004 pre-employment physical and drug test.
12. Defendant EPG covers workers' compensation injuries for the temporary workers it supplies to Penco so long as the injury arises out of the duties of employment with Penco or otherwise meets all the elements of a workers' compensation claim. However, the undersigned find that in the case sub judice, plaintiff's having her pre-employment physical on June 17, 2004 was solely for the purpose of the possibility of employment with defendant Penco and was not in furtherance of or related to her employment as a temporary worker with defendant EPG. Plaintiff's temporary employment through defendant EPG and assignment to defendant Penco did not require plaintiff to attend the pre-employment physical and testing. Plaintiff attended the physical knowing that the physical was a condition precedent to permanent employment with defendant Penco and not related to her duties for defendant EPG. Defendant EPG was not involved in the payment of or scheduling of the physical exam and drug testing. In addition, plaintiff's job duties with defendant EPG did not require plaintiff to drive her personal vehicle to fulfill her employment duties. *Page 8 
13. The undersigned find that plaintiff's automobile accident did not arise out of her employment with defendant EPG and at the time of the accident plaintiff was not acting within the course and scope of her employment.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The evidence shows that there was no conditional offer of employment by Penco to plaintiff prior to her injury by accident. Rather, plaintiff was taking a physical and drug test as a precedent for eligibility for possible permanent employment status. There was no contract of employment and none of the other criteria for permanent employment was undertaken prior to plaintiff's injury by accident. Accordingly, plaintiff has failed to prove the requisite employer-employee relationship necessary to obtain workers' compensation benefits from Penco Products, Inc., and ACE USA/ESIS for plaintiff's June 17, 2004, automobile accident. N.C. Gen. Stat. § 97-2(2);Huntley v. Howard Lisk Company, Inc., 154 N.C.App. 698, 573 S.E.2d 233
(2002).
2. At the time of plaintiff's June 17, 2004 automobile accident plaintiff was employed by defendant EPG as a temporary employee. N.C. Gen. Stat. § 97-2(2).
3. In order to establish a right to compensation for an injury by accident, plaintiff must show that the injury resulted from an accident arising out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6). The employee must establish both the arising out of and in the course of requirements to be entitled to compensation. Roberts v.Burlington Indus., Inc., 321 N.C. 350, 364 S.E.2d 417 (1988). In order to show that an injury arose out of employment, the injury must have been a natural and probable consequence of the employment so that there is some causal relation between the accident and the duties of employment. Didly v. MBW *Page 9 Investments, Inc., 152 N.C. App. 65, 566 S. E. 2d 759 (2002). An accident arises in the course of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business. Perry v. American Bakeries Co., 262 N.C. 272,136 S.E.2d 643 (1964). In the case sub judice, the greater weight of evidence shows that plaintiff's July 17, 2004 accident was not a natural or probable consequence of her employment with EPG. In addition at the time of the accident plaintiff was not engaged in an activity or duty in which she was authorized to undertake by EPG in order to further EPG's business. Therefore, plaintiff's July 17, 2004 automobile accident did not arise out of and in the course of her employment with defendant EPG. As such plaintiff's claim is not compensable under the North Carolina Workers' Compensation Act.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Plaintiff's claim for benefits under the North Carolina's Workers' Compensation Act against defendant Penco and its insurer, ACE USA/ESIS is hereby DENIED.
2. Plaintiff's claim for benefits under the North Carolina Workers' Compensation Act against defendant EPG and its insurer, National Benefits America, Inc. is hereby DENIED
3. Defendants EPG and National Benefits America, Inc., shall pay the costs.
 This the 15th day of November, 2007. *Page 10 
 S/___________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/________________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG CHAIR *Page 1